# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5629 | **DATE** | 12/23/2002 |
| **CASE TITLE** | Bargenquast vs. Nakano Foods, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on ___ set for ___ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ set for ___ at _____.
(7) ☐ Trial[set for/re-set for] on ___ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting plaintiff's motion to confirm the arbitration award and denying defendant's motion to vacate the award. Defendant is therefore ordered to pay plaintiff the sum of $418,775 plus interest at nine percent per annum from July 9, 2002 through the date of full tender as calculated pursuant to Halloran. Any pending motion in this case is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 2 4 2002 | |
| | Notified counsel by telephone. | | date docketed | 36 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/23/2002 | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice MPJ mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOUGLAS W. BARGENQUAST,          )
                                 )
            Plaintiff,           )
                                 )                 DEC 2 4 2002
      v.                         )
                                 )   No. 02 C 5629
NAKANO FOODS, INC.,              )
                                 )
            Defendant.           )

## MEMORANDUM OPINION AND ORDER

Plaintiff Douglas Bargenquast and defendant Nakano Foods, Inc. ("NFI") entered into an employment agreement, whereby Mr. Bargenquast was to serve as Chief Executive Officer and President of NFI. The employment agreement contained an arbitration clause. A dispute arose regarding Mr. Bargenquast's subsequent termination, and the dispute was submitted to arbitration. The arbitrator rendered an award of $418,775 in Mr. Bargenquast's favor.[1] Mr. Bargenquast now files motions in this court to confirm the award pursuant to § 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., to enter judgment on the award, and for a writ of execution on the judgment pursuant to Fed. R. Civ. P. 69.[2] NFI

---

[1] This amount constitutes an award of $417,800 under the employment agreement and $975.00 in arbitration fees and expenses.

[2] Because the FAA does not create federal question subject matter jurisdiction, there must be an independent ground for federal jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983). Here, the parties are of diverse citizenship and satisfy the monetary jurisdictional requirement.

30

opposes these motions and seeks to vacate the arbitration award under § 10 of the FAA. I grant Mr. Bargenquast's motion to confirm the award, deny NFI's motion to vacate the award, and order NFI to pay Mr. Bargenquast $418,775 plus interest.

I. Standard of Review

Under § 9, I must grant an order confirming an arbitration award unless the award is vacated, modified, or corrected under §§ 10 or 11.[3] Here, NFI seeks to vacate the award under § 10(a)(4), which allows a court to vacate the award "[w]here the arbitrators exceeded their powers." Judicial review of a commercial arbitration award is "grudgingly narrow." *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1253 (7th Cir. 1994). Neither errors in the arbitrator's interpretation of law or findings of fact, nor an insufficiency of evidence supporting the arbitrator's decision justify reversal of the arbitration award. *Id.* at 1254. NFI claims that the arbitrator's decision was not supported by law or substantial evidence. Under the restrictive

---

[3] By its terms, § 9 applies only to cases in which "the parties in their agreement have agreed that a judgment of the court shall be entered upon the [arbitration] award." The Seventh Circuit has held that the consent to judgment contemplated by § 9 need not be explicit. *Milwaukee Typographical Union No. 23 v. Newspapers, Inc.*, 639 F.2d 386, 389 (7th Cir. 1981). Here, the arbitration clause indicated that any dispute "shall be finally resolved by a binding arbitration to be conducted . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association." Such language is sufficient to deem both parties to have consented to the entry of judgment on the award such that § 9 applies. *See id.* at 389-90.

2

standard of review described in *Eljer*, such claims, even if true, would not show that the arbitrator exceeded his normal powers.

NFI argues, however, that the arbitrator's powers were expressly limited by the arbitration clause, which states that "[t]he arbitrator . . . shall have no power, in rendering the award, to alter or depart from any express provision of this Agreement or to make a decision which is not supported by law and substantial evidence." (Employment Agreement ¶ 10.) Thus, argues NFI, any award not supported by law and substantial evidence would be made in excess of the power expressly delegated to the arbitrator by the parties and could therefore be vacated by a district court under § 10(a)(4). In order to enforce this contract term, however, I would have to review the arbitration decision to determine whether it was supported by law and substantial evidence. This is a far more searching review than the "grudgingly narrow" review described in *Eljer*. Whether parties can contractually expand the judicial standard of review of an arbitration award is the subject of a circuit split.

The Third, Fifth, and Ninth Circuits have all clearly held that parties can expand the standard of review. *Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 293 (3d Cir. 2001) ("We . . . hold that parties may opt out of the FAA's off-the-rack vacatur standards and fashion their own."); *Gateway Techs., Inc. v. MCI Telecomms. Corp.*, 64 F.3d 993, 997 (5th Cir. 1995) ("When, as here,

3

the parties agree contractually to subject an arbitration award to expanded judicial review, federal arbitration policy demands that the court conduct its review according to the terms of the arbitration contract."); *LaPine Tech. Corp. v. Kyocera Corp.*, 130 F.3d 884, 889 (9th Cir. 1997) ("[W]e fully agree with the Fifth Circuit [in *Gateway Technologies*]. Federal courts can expand their review of an arbitration award beyond the FAA's grounds, when (but only to the extent that) the parties have so agreed."). Additionally, the Fourth Circuit, in an unpublished opinion, has also held that parties can contractually expand judicial review of an arbitration award. *Syncor Int'l Corp. v. McLeland,* No. 96-2261, 1997 WL 452245, at **5-6 (4th Cir. 1997) (citing *Gateway Technologies*).

On the other side of the split sits the Tenth Circuit, which has expressly held that "parties may not contract for expanded judicial review of arbitration awards." *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 937 (10th Cir. 2001) (acknowledging circuit split). In addition, the Eighth Circuit has, in dicta, expressed concerns that indicate it may lean towards the view of the Tenth Circuit. *See UHC Mgmt. Co. v. Computer Scis. Corp.*, 148 F.3d 992, 997 (8th Cir. 1998) ("It is not clear . . . that parties have any say in how a federal court will review an arbitration award when Congress has ordained a specific, self-limiting procedure for how such a review is to occur."). The Seventh Circuit has not directly

4

addressed the issue.

The circuits allowing parties to contract for a higher standard of judicial review of arbitration awards rely on the Supreme Court's decision in *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468 (1989), which held that the FAA requires courts to enforce arbitration agreements, "like other contracts, in accordance with their terms." *Id.* at 478. The circuits allowing expanded review read *Volt* and its progeny to mean that if parties specify in an arbitration agreement that a heightened standard of judicial review is to be applied, courts are obliged to enforce that term of the agreement. *See Roadway Package Systems,* 257 F.3d at 292-93; *Gateway Techs.,* 64 F.3d at 996; *LaPine Tech.,* 130 F.3d at 888. The Tenth Circuit in *Bowen* acknowledged the contractual nature of arbitration but argued that "no authority clearly allows private parties to determine how federal courts review arbitration awards." 254 F.3d at 934. The court refused to read *Volt* as broadly as the other circuits, noting that in *Volt*, the Supreme Court allowed enforcement of an agreement by the parties to apply state rules to their arbitration because doing so "gave effect to the contractual rights and expectations of the parties *without doing violence to the policies* behind . . . the FAA." *Id.* (quoting *Volt,* 489 U.S. at 479) (emphasis added by *Bowen* court). The Tenth Circuit concluded that while the contractual agreement in *Volt* did not undermine FAA

policies,[4] allowing parties to contract for a heightened standard of judicial review would undermine FAA policies such as "the independence of the arbitration process and . . . finality of arbitration awards." *Bowen*, 254 F.3d at 935. Additionally, the Tenth Circuit noted that reviewing an arbitration decision under a contractually designated standard of review, "the reviewing court would be engaging in work different from what it would do if it had simply heard the case itself." *Id.* at 935-36.

I find the Tenth Circuit's reasoning compelling and agree that parties may not contractually expand the limited standard of judicial review of arbitration awards. "Whether to arbitrate, what to arbitrate, how to arbitrate, and when to arbitrate are matters that parties may specify contractually. However, [there is] no authority explicitly empowering litigants to dictate how an Article III court must review an arbitration decision." *LaPine Tech.*, 130 F.3d at 891 (Mayer, J. dissenting) (internal citation omitted); *see also id.* (Kozinski, J. concurring). Absent such explicit authority from Congress, the Supreme Court, or the Seventh Circuit, I will not defer to parties' agreement to alter the well-established

---

[4] The contractual agreement in *Volt* was that California law, which includes a provision under the California Arbitration Act allowing a court to stay arbitration pending resolution of related litigation, would govern the arbitration agreement. *See Volt*, 489 U.S. at 470.

6

narrow standard of review.[5]

I also believe the Tenth Circuit approach is likely to be adopted by the Seventh Circuit. In *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501 (7th Cir. 1991), Judge Posner, in *dicta*, noted that if parties so desire, "they can contract for an appellate arbitration panel to review the arbitrator's award. But they cannot contract for *judicial* review of that award." *Id.* at 1505 (emphasis in original). While *Chicago Typographical Union* was a labor relations case arising under the Taft-Hartley Act, *id.* at 1503, the Seventh Circuit has indicated

---

[5] Even if parties were permitted to alter the standard of review, it is far from clear that that is what the parties did here. The circuit cases permitting contractual expansion of the standard of review involved contractual agreements that *expressly* provided for expanded review. See *Gateway Techs.*, 64 F.3d at 996 ("[The parties'] contract details that '[t]he arbitration decision shall be final and binding on both parties, except that errors of law shall be subject to appeal.'") (emphasis removed); *LaPine Tech.*, 130 F.3d at 887 (contract stated that "[t]he decisions and awards of the [arbitrators] may be enforced by the judgment of the [U.S. District] Court or may be vacated, modified or corrected by the Court . . . where the [arbitrator's] findings of fact are not supported by substantial evidence, or . . . where the [arbitrator's] conclusions of law are erroneous"); *Syncor Int'l*, 1997 WL 452245 at **6 ("[T]he Arbitration Agreement provided that '[t]he arbitrator shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected by judicial review for any such error.'"). Cf. *Roadway Package Sys.*, 257 F.3d at 293 (arbitration agreement specified that state law (with vacatur standards different from FAA) would govern; court held agreement did not demonstrate clear intent to displace FAA standard of review). Here, the agreement simply states that "[t]he arbitrator . . . shall have no power, in rendering the award, to alter or depart from any express provision of this Agreement or to make a decision which is not supported by law and substantial evidence;" it says nothing about appeal or judicial review.

7

that the same standard of review applies when a federal court is asked to set aside an arbitration award "whether the award is made under the Railway Labor Act, the Taft-Hartley Act, or the United States [Federal] Arbitration Act." *Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1194-95 (7th Cir. 1987). Further, I think that the Tenth Circuit's argument that contractually expanded judicial review forces courts to engage in work different from what they would do if they had simply heard the case themselves and places them "in the awkward position of reviewing proceedings conducted under potentially unfamiliar rules and procedures," *Bowen*, 254 F.3d at 935-36, has some traction in the Seventh Circuit. The Seventh Circuit has stated that "[p]arties cannot by contract require a court to follow procedures unfamiliar to it." *Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1525 (7th Cir. 1989) (noting that federal courts have a residuum of authority to refuse to enforce a choice of law provision in a diversity case, even when the forum state would enforce it). Thus, because I agree with the Tenth Circuit's approach in *Bowen*, and believe that the Seventh Circuit would too, I hold that parties may not contractually expand the scope of judicial review of arbitration awards.

As a result, I review the award here under the "grudgingly narrow" standard of *Eljer*. NFI seeks to vacate the award on the ground that the arbitrator's award was not supported by law or substantial evidence. Under *Eljer*, however, neither mistakes of

law nor an insufficiency of evidence permit me to disturb an arbitrator's award. 14 F.3d at 1253-54. As a result, I may not vacate the award under § 10 of the FAA, and instead must confirm it under § 9.

## II. Interest

In seeking confirmation of the award, Mr. Bargenquast also asks that I add interest accrued from its date of entry. Illinois law provides post-judgment interest at a rate of nine percent per annum. 735 ILCS 5/2-1303. This statute applies to arbitration awards. *See Cerajewski v. Kunkle,* 674 N.E.2d 57, 61 (Ill. App. Ct. 1996). Interest began accruing on July 9, 2002 when the award was entered. Interest does not stop accruing until full, formal tender has been made. *Halloran v. Dickerson,* 679 N.E.2d 774, 778 (Ill. App. Ct. 1997). Under this statute, interest is calculated per year, then per calendar month, then per day. *Id.* at 783. Daily interest is only calculated for periods less than a full calendar month. Thus, as of November 9, $12,563.24 (4 months @ $3,140.81, not 123 days @ $104.69) of interest has accrued. Interest will continue to accrue until NFI makes full tender of the award and accrued interest.

Mr. Bargenquast also requests an explicit instruction that further interest will begin to accrue fifteen days after the entry of this order, pursuant to the Illinois Wage Payment and Collection Act, 820 ILCS 115, which states that an employer ordered by a court

9

to pay "wages" who fails to do so within fifteen days after the order is entered shall be liable for a penalty of one percent per day. 820 ILCS 115/14(b). However, this statute does not cover employees "who [are] free from control and direction of the performance of [their] work, both under [their] contract of service with [their] employer and in fact." 820 ILCS 115/2. It is not clear that this statute even applies to Mr. Bargenquast. *See Doherty v. Kahn*, 682 N.E.2d 163, 172 (Ill. App. Ct. 1997) (holding that employer's president retained control and direction over his own work and thus did not fall into class of employees protected by wage act). Additionally, Mr. Bargenquast misunderstands the statute when he claims that the amount in controversy here constitutes "wages" under the act. He cites the definition of "final compensation" (payments to separated employees), but inexplicably concludes that the money at issue here is "wages." 820 ILCS 115/2 (defining "wages" and "final compensation"). The money at issue here (if the act applies) is "final compensation" under the statute. While "final compensation" may include "wages," the two are defined and treated differently under the statute. Section 14(b) applies only to "wages." This is especially clear in light of the fact that section 14(a) applies to "wages, final compensation, and wage supplements." Thus, Mr. Bargenquast will not be entitled to additional interest under the Wage Payment and Collection Act.

III. Conclusion

Plaintiff's motion to confirm the arbitration award is GRANTED; Defendant's motion to vacate the award is DENIED. Defendant is hereby ORDERED to pay plaintiff the sum of $418,775 plus interest at nine percent per annum from July 9, 2002 through the date of full tender as calculated pursuant to *Halloran*.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated:   December 23, 2002